And we'll proceed to the second case of the day. Our next case is the United States v. Kappes. Mr. Hillis? May it please the Court. Counsel, my name is Daniel Hillis. I'm with the Federal Public Defender's Office and I'm here today representing Mr. Parrish Kappes. He raises three issues on appeal. First, the supervised release conditions that weren't orally pronounced at sentencing are null and must be stricken. And this Court's jurisprudence is clear on this matter and we rely on Alboret and the related case law on this. And therefore we ask that the various conditions that were listed in the judgment that were not orally pronounced be stricken. And those are the requirements that Mr. Kappes submit to physiological testing, that he be prohibited from having drug paraphernalia, and that he allow United States probation officers to remove computers, etc., from his residence for inspection. Again, those conditions were included and I think therefore under this Court's law on this subject those conditions need to be stricken. Unless the Court has questions for me on that topic, I'll move to the second issue. Couldn't that have been corrected in the judgment? Since it was not announced orally, those conditions were not announced orally, couldn't you have sought a correction of the judgment? I don't know if that is available or not, but I know that this remedy is available to us here now, so I can't guess why or whether that was something that trial counsel could have done. It didn't happen, though, and therefore I'm saying it isn't here. Well, it would seem to, if it was not orally announced, it would seem to be a clear error, and that would seem to fit under Rule 35a. If they could have sought a correction, again, they didn't, and I don't believe that it presents any bar that stops us from asking for the relief here and now. It certainly would save us a lot of time on these appeals if you just go back to the district judge and say, look, you didn't announce this, so it can't be in the judgment. Yes, however, once the notice of appeal is filed, I'm not certain that the district court would answer that, so I think it would be divested of jurisdiction, and therefore with the other issues in particular that are raised here, it would be appropriate to seek relief here as part of the additional relief that we're seeking. If it was a stand-alone issue, that may be a different matter, but that's not the case here. Moving on then to the second issue, the district court erroneously imposed supervised release conditions banning contact with minors, banning my client from possessing pornography, banning him for the use of the internet for purposes of sexual arousal, banning the excessive consumption of alcohol, and banning mood-altering substances. The necessary 3583D determinations weren't made, and of course, some of these are more serious than others, but in any event, the findings is a procedural error in and of itself, and the government bears the burden of establishing the necessity of the conditions, as well as the findings that support them, and it can't do that here because the findings weren't made. The no-contact ban is improper because Mr., I'll focus on that, because Mr. Kappas never had sexual contact with children such that any 3583D factor would support the imposition of that particular condition. As for the bans on mood-altering substances and excessive consumption of alcohol, this court's recently issued opinions on those subjects. We rely on those Siegel and the Baker decisions. Sexual arousal and pornography are problematic because they're vague. Pornography, of course, an individual has a First Amendment right to possess pornographic material. Unless the court has questions on that topic, I'll move to the third issue, which is considerably narrowed by virtue of the recent decision in the United States versus Hines, which we have submitted a 28-J letter on, and the government beat us to the punch, submitted a 28-J letter on it. As the court would expect, we argue that it means different things. So in Hines, the court said that there's statutory authority to impose the payment requirement. We argued a contrary position, but we concede the issue in that regard. However, Hines did nevertheless say that there was a problem insofar as an indigent defendant is being made to pay a payment obligation on a court-ordered program. And Hines said, just because a court can order something doesn't mean that it should order something, and that's the case here. We have an indigent individual, Mr. Kappes. Mr. Kappes is poor now. He's going to be poor later after he spends his entire time in prison jobless, or whatever pennies he scrapes by in prison industries, and then he'll come out and he'll be made to pay for a court-ordered program, and that's simply unfair, and there's nothing to suggest that that would be anything other than a greater-than-necessary deprivation of his liberties, such that 3583D would support that imposition in the first place. Sir Hillis, what if a defendant, while incarcerated, was a beneficiary of an inheritance, so that he comes out not quite as poverty-stricken as you suggest would be here? If that was just some standard language that was put in by a district judge, would that be acceptable? It would. I'd be troubled that if the conditions being imposed based on extant facts, and in this case they don't exist, and so... Well, they might. I mean, it's not an, you know, an impossible situation. Not impossible, and so I suppose the government should ask for modification. If he comes into some reasonable estate, and could be arguably available, have available funds, wouldn't that be the same as winning the lottery? I don't know whether he has access to a lottery ticket or something. If the statute allows them to seek repayment for the provision of the services, and we have a modification procedure that allows the supervised release, I think that's the better way to go about it. Go on the developed facts in the case that allow for the condition to either be imposed or not imposed. And here, the facts don't allow for the imposition. If they do later on, then it should be for the government to come... Well, doesn't much of supervised release speak to future events? It does, and problematically so, because the conditions should be imposed based on facts, and the 3553A factors are specifically cited in 3583D, which is the supervised release provision. And so we should get beyond this effort to look into a crystal ball and determine that these conditions should be imposed based on future events. We should, in fact, wait... But the law requires the sentencing judge to do that. Supervised release is mandatory, isn't it? Supervised release is mandatory in most cases, not in all cases, of course. We've got deportable aliens and things of that nature, but by and large, the vast majority of the cases. Yes. And the sentencing judge is required to make this sort of future gaze and impose some conditions. I disagree, but only in this regard. We have certain mandatory conditions. Even some of those don't have to be imposed. For instance, drug testing. If an individual doesn't have a drug problem, we don't need to impose the drug testing requirement, though it's a mandatory condition. Everything else is a discretionary condition, and it would be subject to modification later on. That is the better route. If this court wishes not to entertain appeal upon appeal about these supervised release issues, there is a practical avenue for the district court judges and for prosecutors. Don't impose the discretionary conditions up front. Depose them later. Come in, seek a modification based on the facts, and then allow the individual to have the supervised release modified, either to his benefit or to his detriment, I suppose, through the modification procedure, but not on this front and not in this wholesale fashion, without facts. Isn't it a benefit to a defendant to know what prospective challenges he may or she may have by identifying areas where if they entered, they would encounter a problem? Sure, I agree with that. So then, but wouldn't that suggest then reasonable guesstimates of future conduct would allow for that? I draw back to my original position. Start with the five mandatory conditions or whatever are applicable in a given case, and then if an additional condition is necessary, bring in counsel, seek modification, have somebody there who's for the defendant's benefit to allow them to understand things or challenge something to say why it's not necessary, but to impose all the conditions up front is the problem, and I think that we should get away from that. Or another way away from it, I suppose, is for the sentencing judge to say, well, I know how I can make sure this person doesn't pose a risk to others for another 24 months by instead of giving him the low end of the guideline, giving him the highest end or beyond, just to keep him within the close supervision of the Bureau of Prisons. Terribly unfortunate if that's the case, because United States v. Johnson says that supervised release serves something different than punitive purposes. The Supreme Court's been very clear on that. So if we have district courts who are essentially using supervised release as an end run around the length of the sentence that they'd otherwise have to give longer explanations for, say, in the instance... Well, it is part of the punishment. Yes, but it's a distinct facet of it. It is something that in 1984 Congress used to replace parole. We don't have many individuals who are on probation relatively, and so this is something that was designed for a particular purpose, and the particular purpose's primary purpose was for the rehabilitation of the individuals, not for their continued supervision to lead to future reincarceration, which is what happens with many of these individuals. If they violate a condition of supervised release, they go back to prison and they do more time than they should, oftentimes on things that are not even criminal, failure to file reports and things like that, grade C violations that were not criminal that are still actionable and can lead to their incarceration, such as the contact with a minor. If you do that and it's not criminal, you can nevertheless be put back in prison. Those are all risks that people shouldn't have to face. I do think that your client's risk, the problem that incarceration to avoid having the supervised release conditions picked apart on appeal when they're not raised below, they may not react well to this process. We'll gladly challenge them below if we had notice of them, which we typically do not. You should get notice. And if we do, perhaps we can explain to the judges why something should be imposed or it shouldn't, why a length of supervised release is excessive, that it doesn't have efficacy beyond a certain period. Any of the things that we can do, we can do in a different way than we're doing it now, and in a better way. That is the central problem with all of these supervised release conditions. They have been rubber stamped and imposed without any respect to the underlying facts and the factors in the case. Unless the court has questions, I'll freeze over the balance of my time. Thank you, Mr. Hillis. Good morning, Your Honor. Good morning, Mr. Hunter. You're here for a hat trick. We're going to get, you're going to argue this case, we're going to give you one break, and we're going to require you complete your appearances seriatim. I suppose we could have scheduled it so you had no break, which I know you could have handled. I hope it's as much of a pleasure for you as it will be for me. Let me start with the comment about no notice and the problem of notice. There were three cases involving conditions of supervised release that were argued yesterday. We're going to get one here, the third one, Juergens, involving standard conditions of supervised release. This particular case is unique in that it only challenges special conditions of supervised release, all of which were listed in the pre-sentence report. So the notice issue is not even on the a plain error review for at least those conditions that were listed in the pre-sentence report and announced at sentencing. So I hope we can dispose of the whole question about standard conditions and the boilerplate. There's no, that's just not an issue in this case. You can decide this case on different grounds than any others. I think the real dispute, the difference of a view in this is what's the proper remedy? And I hope Judge Tinder, you'll be cognizant. I'd like to figure out the most efficient way to handle some of these. I foresee at least three options. Mr. Hillis's proposal is that you remand it back to the district court to correct the errors. There's no question. Some of the conditions here were deemed erroneous after the sentencing in this case by Siegel and Baker and some of the cases. So there's no dispute on the erroneous aspect of some of these. The question is, well, what do we do about it? I don't see that as an efficient process whatsoever. And I'll come back to that after I tell you there are a couple of other possibilities. And one is the one that's proposed in the government's brief. And that is for this court to just take hold of this and correct, direct the district court to make the corrections that are appropriate. It's essentially for the first three, the paraphernalia, et cetera, would be to treat it like you're a district court and make the 35A correction, which by the way, I think should have been done. And Mr. Hillis was reluctant to guess at why there wasn't a motion in the 35A. My guess is they didn't care. I mean, who that's restricted in controlled substances cares whether or not paraphernalia is included in there. You agree, though, that 35A would be a correcting vehicle, a corrective vehicle, for those particular... Well, it's certainly a correct vehicle for the psychological, physiological one, which is essentially, I guess, very, very close to a clerical error. I mean, the judge just misread it, obviously. He must have had the PSR or whatever form he was reading from, just misread a word. So I think that that would clearly be one for 35A. The one regarding the removal condition of the computer, I'm not so sure that you can say that that's a clerical error, the 35A correct, but I also don't think it's... You suggested anything that's not announced is therefore unlawful when it appears in the written judgment. I don't think the case law supports that. The judge can elaborate in a written order once the condition is announced, and this condition was announced just left off the tail end of the possibility of having... You're about to say something, so go ahead. No. Perhaps I misspoke. I mean, if the written judgment clarifies what is spoken, that's permissible, but if there was no announcement of the condition at sentencing, then it can't be added later when the defendant's not there and... No doubt about that, yes. Yes, and there are cases pending now that have that very situation, but this is not one of them. The three conditions at issue were all announced. Paraphernalia was left out. One word was misspoken when the judge said psychological testing as opposed to physiological testing, but there's no question that there was a sex offender treatment, no doubt that there was a ban on controlled substances, and there's no question that there was a computer monitoring, this filtering software that could be inspected. So if you look at the oral announcement at sentencing, it included that condition. It just left off the option of removing it for further inspection. You can understand how that... It's simply a clarification or elaboration that a probation officer goes out to the house and doesn't have the technological skill to figure out what the computer contains and needs to remove the computer. So I would say that all three of those changes or additions are clarification or elaboration. But yes, they probably all could have been addressed promptly in 35A. My point really was, well, how significant are they? And that brings me back to the plein air on all of these issues. Why was there not an objection on any of these issues in the district court? They're in the PSR. I mean, none of them are tremendously pernicious. I would say that the most problematic one is the ban on any pornography, and that's pretty broad, and we don't support that in our brief and suggest an alternative phraseology that this court can impose. So let me get back to what the possible remedies are. One remedy is for this case, take the bull by the horns and direct the district court to simply change its written order. There's another possibility, too, that it piggybacks on something that Mr. Hill has said about the ability to modify the terms of supervised release. Bear in mind that Mr. Kappas got a 20-year sentence. He served part of that. I happen to check on the Bureau of Prisons website for the inmate locator. His presumptive relief date is March of 2013. So there's another 15 and a half years in which we could sort of figure out what's... 2023. 2030. 2030. 2030. Yeah, 15 and a half years from now. So any decision that this court makes, this court as opposed to the district court, any decision this court makes will have no serious impact until Mr. Kappas is released from prison. So you've got a lot of time to work on this if you want to take it. But one alternative is to simply recognize all these conditions were listed in the pre-sentence report. None of them were objected to. It is a plain error review and there is no plain error. The significance of all this, we all recognize that some of them are erroneous and the law may change on others in the intervening 15 years. Mr. Hill has pointed out that it's so easy to modify these conditions that this court decided in Sylvia some years ago. There can't be a plain error because of the ability of the district court to go back and modify it. So let me suggest why it's inefficient to remand this case now. There are two reasons. One, it's got to be reassigned to a different judge because the judge who imposed the sentence is now retired from the federal bench. Two, what we have experienced is when these cases come back on remand, they don't get limited to simply the special conditions that were challenged. Defense counsel aggressively, perhaps commendably, tries to open the thing up so it becomes more of a challenge and more time consuming for the district court than it really should be. That's why my recommendation is option two or three. You could limit a remand to direct the district court to make the corrections that you think are appropriate. For example, pornography. We can all agree that pornography is tremendously broad. Can you imagine, you get out of jail and you wonder whether or not you can read James Joyce's Ulysses. Who's going to define that? So the suggestion we have and has been imposed in cases since we've run into problems is visual depictions of sexual explicit conduct as defined in 2256. The other option is the Sylvia's option, which is simply to say there's no plain error here. When this happens, the conditions can be modified. And we will assume that that happens. The perfect example, Judge Flanagan, is your example of who knows what kind of wealth or lack of wealth he'll have when he comes out of prison. Now let me go back to the end of your discussion with Mr. Hillis about his suggestion that we should just wait and impose these conditions after the defendant comes out. We've heard that and seen it in other cases. There are a couple of problems with that. One problem is, of course, the district court is required by statute to impose a condition. So that's a complete non-starter. They are going to be imposed unless Congress for some reason acts. But only the mandatory conditions, right? The district judge is not required to impose any special conditions. And you know very well if they continue to have problems on appeal, exactly what is going to happen, Judge Gender, is what you suggested might happen. The discretionary conditions are valuable for a couple of reasons. And one is it advises the Bureau of Prisons what the circumstances and characteristics of this defendant is. So bear in mind, the Bureau of Prisons is essentially getting the information, obviously, about the defendant. But the judgment and commitment order will tell the Bureau of Prisons, in this case for example, here's someone that needs sex offender treatment. I mean this defendant clearly has a problem that needs to be addressed. But think of it more broadly where very common condition of supervised release, special condition, discretionary condition of supervised release, is you're required to get a GED. Well, if the defendant knows when he gets out of prison, one of the conditions of the supervised release is he's got to get a GED, then why in the heck wouldn't he go ahead and try to get it in prison? So there's an advantage to the defendant to have these discretionary conditions imposed up front. You don't want to have somebody come out of prison and then the judge says, okay, by the way, you know, you've got to get a GED while you're in supervised. Well, my goodness, I could have gotten that during So it's tremendous value, I think, in having the district court determine what the appropriate conditions are up front. So everybody knows going in, both the Bureau of Prisons can determine what kind of treatment is appropriate, what kind of things, the various guidance can be provided to the defendant, and particularly so the defendant knows up front going into prison. Mr. Campos has, you know, 15 and a half years to take care of some of this stuff, and you know very well that when he comes out, if for some reason he goes through a sexual offender evaluation and they conclude, oh my gosh, he's miraculously cured, we don't need to have any more sex offender treatment, he's not going to have the sex offender treatment if he gets it in the Bureau of Prisons. So I'm going to finish here because I'm running short of time, but I would suggest so we do not have a second appeal. That's really my goal here. We come out in these cases, and if it goes back to the district court on remand, and the district court has some broad, you know, change these conditions, we're likely to come back here with additional issues. Mr. Hartzell, let me inquire of you, thinking in terms of, you know, 3553 approach. When we're talking about special conditions, how specific would a district judge need to be in tethering it to, quote, the particular defendant, in the government's view? In this case, the special conditions or the standard conditions? I meant generally. I think it's different. I think for the special conditions we typically would have some fairly specific findings. Sex offender treatment is an example. Some of the other special conditions I'm trying to think off the top of my head. Or you would, you know, obviously you'd want to have the characteristics or the record reflect a characteristic, this is somebody that has a sex offender problem. I mean, there are lots of these cases, by the way, before this court. So that's, I distinguish between the special conditions and the standard conditions. Take the standard condition number one of the home visit, which we'll probably talk about when we get later in the day. That's just such a fundamental feature of supervision that I don't think the district court would need to say anything more, and I'm guessing that when the three of you sat on the district court, you probably didn't say anything more than this is an essential feature of supervision. We've got to have certain things that the district court orders in order to make sure that a person coming out of prison has an appropriate supervision. Home visit and several of the other standard conditions are such. So you wouldn't require findings then in those cases? No, the finding... You would say that's central to supervision. The finding is that it's essential to supervision. And I would hope that this court would respect that that would be enough. Or some of them. I mean, for home visits, I can't imagine a defendant coming out for whom the district court would say, oh, you don't have to have a home visit. It's hard for me to envision any defendant, tax offender, drug offender, sex offender. Mr. Hartslow, I don't want to extend your time up here, but for some of us... No, please. ...you have preceded the sentencing guidelines and supervised release. That's fair. That's fair. Mr. Hartslow, do you think that's an ageism comment? I do. I do. I do. You don't have to answer it. No. Thank you. Mr. Hillis. Thank you. I'm going to try to make it easy for the government not to have to have a second appeal by suggesting they don't ask for these conditions. They don't have to ask for them. If they want to, then they're doing their job and we'll do ours. And if that means coming back here and that's unfortunate for anybody, I won't have much to say on that. I don't file an Anders brief if I have a valid issue and these are valid issues. The government can ask for the conditions. If it does, it should support the conditions. It's not been doing that. The judge is supposed to make an independent determination. Siegel expressly says this. But for these conditions, these briefs and all these cases, there must be a dozen or more, are really, they're Anders cases except for these special conditions. I don't regard them that way any longer, Judge, because that's to suggest it's just a step beyond an Anders. And these are important things when you have individuals who might be put back in prison and at the revocation proceedings they have Rule 32.1, diminished procedural protections and due process isn't fully available to them. They go back and they do prison. They come back out on an additional term of supervised release. They can go back in and do more prison if they violate. These are serious matters. And it's not enough to say that the standard conditions are typically imposed and you don't have to say much on them. Look at what the statute requires. That's not what the statute says. Well, Mr. Hillis, what about Mr. Hartler's point about a home visit? What kind of a finding would you need in that regard? Not much, but I don't think that it's to say that it should be in every case. You can imagine white-collar defendants who don't have to have supervision from the probation officers, perhaps, showing up to their house like a drug dealer who has a history of storing materials at his residence. But in any event, the Fourth Amendment, the touchstone is reasonableness. And I know that's not an issue in this case. There's a deterrent effect of that potential for home visitation. And the role of the probation officer is to have some control over the supervised releasee, and home visit's part of that. Sure, and so have a reasonableness requirement like the Fourth Amendment says. And I know what probation is doing. Home visit is not necessarily a search. They could call it an ice cream social for all I care, but when they show up at their house, it's a law enforcement person who's looking there, and if they're in violation, like a police officer would, they're going to be subjected to penalties for it. So I think it is a problem. And I'm trying to protect my clients, not to interfere with probation, but to protect my clients. And so we've got countervailing interests here. It's not easy to modify conditions of supervised release, by the way. And the court can look at its own laws on this, but my clients won't have lawyers. Your office would represent an indigent, wouldn't it, if an indigent came and said, I've got supervised release, I need a modification, or they would not? I know all three of you are district court judges, and I don't know what the practice was with your probation officers, but they present an option to our clients that say you can sign and waive the hearing and have the modification, or you can ask for a hearing. Clients are very reluctant to be cross-wise with the probation officer. But your office has an obligation to represent the indigent on that type of thing, don't they? Only if appointed. We can't even give them advice once our representation ends. And so you've got individuals who don't have representation. So if someone shows up at your office and says, I'm on a supervised release, they want a modification, or I want this modified, will you represent me? And you don't go to court and say, please appoint us for this indigent? I haven't had it happen, but I think that we'd have to be reappointed in order to do it. I don't think that I can do anything on that. I've had the government sort of bark when a client will contact us about a Rule 35, a motion for a reduced sentence. We're not appointed on the case any longer. It causes some problems for us. But I want to talk just briefly, because the red light's on, if I can complete this thought.  hearing from what I've seen in the case law, does not have to make findings, and of course my clients won't have a lawyer. So again, the better practice is to get this up front as much as possible. And then if there's a modification, have the district court appoint counsel. But again, clients don't do a lot of things when they're with a probation officer. They don't assert their Fifth Amendment right. They don't say, I want to have that hearing. They have a fine line to walk with their probation officers. And I think that that is often overlooked here when we're all trying to figure out what's the best way to do things. Clients sometimes don't do things that are in their best interest, and that includes challenging conditions of supervised release because they don't want to invite the wrath of a judge, get a longer sentence than maybe they otherwise would have if they just said nothing. But it can affect them later, and that's what we're concerned about here today. Unless the court has any additional questions for me, I'll wrap up just with this. We ask for clients to be able to participate in the programs Mr. Hartzler asked about, GEDs, RDAPs, CBT, sex offender treatment programs. Those are some that I mentioned in addition to the ones that he mentioned. If they're getting those things in prison, I don't know why we have conditions of supervised release that also require them to get them when they get out. It shouldn't be done. We'd like people to discharge their obligations in prison as opposed to have them as a lingering obligation when they get out that can cause them problems when they're trying to work and take care of their other responsibilities. It's hard to meet all these obligations. Thank you. Thank you, Mr. Hillis. We'll take that case under advisement.